**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

REY DENZO KAZEMI,

Petitioner,

v.

JEREMY CASEY, in his official capacity as Warden of the Imperial Regional Detention Facility; DAVID MARIN, in his official capacity as Field Office Director of the Immigration and Customs Enforcement, Enforcement and Removal Operations Los Angeles Field Office; KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security; PAM BONDI, in her official capacity as Attorney General of the United States,

Respondents.

Case No.: 25cv1926 DMS (DEB)

**ORDER GRANTING IN PART AND DENYING IN PART PETITIONER'S APPLICATION FOR FEES AND EXPENSES UNDER THE EQUAL ACCESS TO JUSTICE ACT**

This case comes before the Court on Petitioner's motion for fees and expenses under the Equal Access to Justice Act ("EAJA"). Respondents filed an opposition to the motion, and Petitioner filed a reply. For the reasons set out below, the motion is granted in part and denied in part.

/ / /

## I.

## BACKGROUND

Petitioner is a 53-year-old citizen of Iran who entered the United States as a legal permanent resident in 1976, when he was four years old. In 2004, Petitioner pled guilty to a serious drug trafficking offense in the United States District Court for the Northern District of Texas for which he was sentenced to 84 months imprisonment. The United States Immigration and Customs Enforcement ("ICE") initiated removal proceedings against Petitioner based on his conviction, and an immigration judge ordered him removed despite a claim of persecution in Iran and request for deferral of removal under the Convention Against Torture ("CAT"). On administrative review, the Board of Immigration Appeals reversed the immigration judge's denial of relief under the CAT. (Decl. of Rey Denzo Kazemi in Supp. of Mot. for Temporary Restraining Order ("Kazemi Decl."), Ex. A, ECF No. 2-2.) On remand, the immigration judge upheld the removal order, but deferred Petitioner's removal to Iran under the CAT. (Kazemi Decl., Ex. B.)

In June 2008, after Petitioner served his custodial term for his drug conviction, ICE released Petitioner from civil immigration detention and placed him under an Order of Supervision that required him to regularly report to ICE. (Kazemi Decl. ¶ 8.) During the first three years of supervision, it appears Petitioner did not have any contact with law enforcement. However, in 2011 Petitioner was cited for obstructing a public officer and driving with a suspended license. Other contacts with law enforcement ensued, but despite those contacts ICE never sought to re-detain Petitioner.

That changed on July 10, 2025, when Petitioner reported to ICE for a routine check-in. During that check-in, and while Petitioner's immigration counsel Ali Farahmand was present, ICE advised Petitioner that his release was being revoked and he was going to be detained. (*Id.* ¶ 10.) According to Petitioner's notes of the report, he asked ICE Officer Linda Lopez why he was being detained and she told him ICE was detaining everyone with a "withholding of removal order." (Pet'r's Supp. Br. in Supp. of Mot. for Temporary Restraining Order ("Supp. Br."), Ex. B, ECF No. 21.) Petitioner explained that his mother,

who lived with him, was recovering from a stroke and he was caring for her. (*Id.*) Mr. Farahmand also asked if Petitioner could be released on bond or fitted with an ankle monitor, but Officer Lopez said no. (*Id.*) Petitioner states he was then placed into a holding cell, his photo and fingerprints were taken, and he was then served with a Notice of Revocation of Release. (*Id.*) Petitioner spent approximately 24 hours in a holding facility in Los Angeles, and on July 11, 2025, was transferred to the Imperial Regional Detention Facility.

On July 30, 2025, Petitioner filed the present case challenging his re-detention. In the Petition, he alleged five claims for relief: (1) The revocation of his release was arbitrary in violation of his due process rights; (2) Respondents failed to provide Petitioner with notice, an interview, and an opportunity to be heard before revoking his release in violation of 8 C.F.R. §§ 241.4(l) and 241.13(i); (3) Respondents re-detained Petitioner without evidence that his removal was reasonably foreseeable in violation of 8 U.S.C. § 1231; (4) Respondents failed to explain why Petitioner was subject to re-detention rendering his continued detention arbitrary, capricious, and in violation of his due process rights; and (5) a conditions of confinement claim.

Along with the Petition, Petitioner also filed a motion for a temporary restraining order ("TRO"). In their opposition to that motion, Respondents raised a number of arguments in response to Petitioner's claims. First, they argued Petitioner was properly re-detained under 8 C.F.R. § 241.4(l)(2)(iii) because they were in the process of obtaining travel documents to facilitate Petitioner's removal to a third country. Second, Respondents asserted Petitioner was provided with the required notice under 8 C.F.R. § 214.4(l), namely that he was being re-detained to facilitate his removal to a third country. Third, Respondents contended Petitioner's re-detention did not violate 8 U.S.C. § 1231 or *Zadvydas v. Davis*, 533 U.S. 678 (2001), because he had been in re-detention for less than a month. In his reply brief, Petitioner argued he had shown a likelihood of success on his claim under 8 C.F.R. § 214.4(l). He also asserted the 6-month presumptively reasonable detention period under *Zadvydas* did not apply to cases of re-detention. (ECF No. 13 at 8.)

At oral argument, Respondents disagreed with Petitioner's argument that *Zadvydas* did not apply to cases of re-detention. (ECF No. 24 at 7.) Petitioner did not stand on that argument at the hearing, but instead focused his arguments on why Petitioner's removal was not reasonably foreseeable. Ultimately, the Court found Petitioner had not shown a likelihood of success on any of his claims, and therefore denied the motion.

Thereafter, Respondents filed a response to the Petition and Petitioner filed a reply. In the reply, Petitioner again asserted and expanded on the argument that the *Zadvydas* six-month presumption of reasonable detention does not apply in cases of re-detention. (ECF No. 29 at 8.) His primary argument, however, continued to be that his removal was not reasonably foreseeable.

A week after Petitioner filed his reply, he filed a renewed motion for TRO on the grounds Respondents had failed to come forth with any evidence that Petitioner's removal was reasonably foreseeable and that Petitioner's mother was scheduled to undergo brain surgery. In that motion, Petitioner again raised the argument that *Zadvydas* does not apply to cases of re-detention, but his primary argument continued to be his removal was not reasonably foreseeable. After hearing argument, the Court granted Petitioner's renewed motion and ordered him released forthwith. Petitioner was released later that day. At Petitioner's request, a further order issued granting the Petition, and judgment was entered accordingly.

## II.

## DISCUSSION

Turning to the present motion, the "EAJA provides for an award of attorney fees and costs to private litigants who prevail 'in any civil action (other than cases sounding in tort)' against the United States and timely file a petition for fees." *Doe v. Chestnut*, No. 1:25-cv-01372-CDB (HC), 2026 WL 1459808, at *1 (E.D. Cal. May 25, 2026) (citing 28 U.S.C. § 2412(d)(1)(A)). "Under the EAJA, a court shall award attorney fees to the prevailing party unless it finds the government's position was 'substantially justified or that special circumstances make such an award unjust.'" *Id.* (quoting 28 U.S.C. § 2412(d)(1)(A)).

Here, the parties do not dispute that the threshold requirements for an award of fees are met. Therefore, the first issue for the Court is whether Respondents have met their burden to show their positions were substantially justified. *Id.* (citing *Thangaraja v. Gonzalez*, 428 F.3d 870, 874 (9th Cir. 2005)). "To be substantially justified, the government's position must have a 'reasonable basis' in law and fact." *Id.* (quoting *Thangaraja*, 428 F.3d at 874). "'When evaluating the government's position under the EAJA, [courts] consider both the government's litigation position and the action or failure to act by the agency upon which the civil action is based.'" *Id.* (quoting *Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147, 1168 (9th Cir. 2019)) (quotation marks omitted).

The action underlying this case is ICE's re-detention of Petitioner seventeen years after it had previously released him into the community. According to the paperwork Petitioner received at the time of his re-detention, ICE made the decision to re-detain him based on its review of his "immigration and criminal history." (Kazemi Decl., Ex. C.)[1]

Petitioner's immigration history had not changed since he was released from ICE custody in 2008. A review of that history would have revealed that Petitioner entered the United States as a legal permanent resident in 1976, when he was four years old. It also would have reflected that Petitioner had been through removal proceedings, was ordered removed to Iran, but was also granted deferral of removal to Iran under the CAT. Nothing in that history would have justified Petitioner's re-detention.

Petitioner's criminal history had changed since his release from custody in 2008, but over the next 17 years none of those changes prompted ICE to re-detain Petitioner either at his regular ICE check-ins or otherwise. Indeed, Petitioner was not re-detained until more than a year after his most recent arrest, which refutes ICE's position that the decision to re-

/ / /

[1] According to Petitioner's notes concerning the events surrounding his re-detention, one ICE officer told Petitioner ICE was detaining everyone with a "withholding of removal order." (Supp. Br., Ex. B, ECF No. 21.)

detain Petitioner was based on a review of his criminal history. Based on this record, Respondents' decision to re-detain Petitioner was not substantially justified.

Turning to Respondents' litigation position, their first argument in response to Petitioner's first TRO motion was that Petitioner's re-detention was lawful because they were "in the process of obtaining travel documents from a third country pursuant to 8 U.S.C. § 1231(b)(2)(E)[.]" (ECF No. 12 at 9.) However, Respondents failed to produce any evidence to support that assertion. At oral argument on the motion for TRO, Respondents referenced news stories concerning the current Administration's efforts to reach resettlement agreements with third countries, but those general efforts said nothing about Respondents' efforts to resettle Petitioner. That evidentiary vacuum remained throughout this case, and supports a finding that Respondents' litigation position had no reasonable basis in fact and was therefore substantially unjustified. *See Tzafir v. Blanche*, No. 25-cv-02126-JHC, 2026 WL 1413606, at *2 (W.D. Wash. May 20, 2026) (finding absence of evidence that third country was willing to accept petitioner supported finding respondents' litigation position "lacked substantial justification"); *S.F. v. Bostock*, No. 3:25-cv-01084-MTK, 2026 WL 1230044, at *4 (D. Ore. May 5, 2026) ("mere speculation" that respondents could obtain travel document to remove petitioner did not establish it was reasonable for them to detain him).

Respondents' litigation position also had no reasonable basis in law and was therefore not substantially justified. Here, Respondents argued Petitioner's re-detention was presumptively reasonable because it had not exceeded the six-month presumptively reasonable period set out in *Zadvydas*. However, as the Court ultimately found, the six-month presumptively reasonable period set out in *Zadvydas* does not apply in cases of re-detention.

As set out in 8 U.S.C. § 1231(1)(B), the removal period begins:

> on the latest of the following: (i) The date the order of removal becomes administratively final. (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final

> order. (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B). Here, Petitioner was ordered removed to Iran on April 27, 2005. (ECF No. 2-2 at 11.) His removal order became administratively final thirty days later, or on May 27, 2025. Pursuant to § 1231(a)(1)(A) and *Zadvydas*, Respondents therefore had until November 27, 2005, to effect Petitioner's removal. They did not do so. Instead, they waited nearly twenty years after the *Zadvydas* presumptively reasonable period had expired and then re-detained Petitioner, assertedly for the purpose of removal. On these facts, Respondents' legal position, namely, that Petitioner's re-detention was lawful under *Zadvydas*, was not substantially justified. *See Duran Siguenza v. Moniz*, No. 25-cv-11914-ADB, 2026 WL 1875680, at *2 (D. Mass. June 29, 2026) (citations omitted), *appeal docketed*, No. 26-1934 (1st Cir. Aug. 17, 2026) ("Based on the facts before the Court and the law as set forth by the Supreme Court in *Zadvydas*, the government has not shown, by a preponderance of the evidence, that it was reasonable to assert, or to argue to this Court, that Petitioner's removal was significantly likely in the reasonably foreseeable future.").

There being no substantial justification for Respondents' positions, the only remaining issue is the amount of the fee award. Under the EAJA, the amount of attorneys' fees awarded "must be reasonable." *Nadarajah v. Holder*, 569 F.3d 906, 910 (9th Cir. 2009). In determining what amount is reasonable, the Court considers "'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983)). "The party seeking an award of fees has the burden to demonstrate that the requested hours were appropriate and reasonable." *Irwin v. Astrue*, No. 08cv0460 JM(LSP), 2010 WL 583658, at *1 (S.D. Cal. Feb. 16, 2010) (citing *Hensley*, 461 U.S. at 437).

/ / /

/ / /

/ / /

/ / /

Here, Petitioner requests 405.2 hours of attorney time billed, with one exception,[2] at $1000 per hour for a total of $348,101.42 in attorney time, and 28.9 hours of billing staff time at $251.84 per hour for a total of $7,278.18 in billing staff time, for a total fee award of $355,379.60. He also requests costs in the amount of $2,757.57.

Before turning to these numbers, the Court notes that although reasonableness is dependent on the facts of the case at issue, Petitioner's request for $358,137.17 is more than six times the highest award the Court could find for similar § 2241 cases in the Ninth Circuit. *See Rahman v. Bondi*, No. 2:24-cv-02132-JHC-TLF, 2026 WL 323046 (W.D. Wash. Feb. 6, 2026) (awarding total fees and costs of $57,785). The number of hours in this case (405.2) is also more than four times the number of hours worked in *Rahman* (88.9), and with the exception of the 77 hours at the statutory rate for Ms. Rausch, the hourly rate requested here ($1,000) is $350 more than the hourly rate requested and awarded in *Rahman* ($650).

Against that backdrop, the Court turns first to the number of hours billed on the present motion, which is 102.8, 77 expended by Ms. Rausch and 25.8 expended by other attorneys. In other cases, attorneys have been able to prepare these kinds of motions in four to twelve hours. *See Elizabeth B. v. Kijakazi*, No. 21-cv-02368-JSC, 2023 WL 3029261, at *3 (N.D. Cal. Apr. 19, 2023) (finding 5.8 hours reasonable); *Mickinzie T. v. Kijazaki*, No. 20-cv-06932-DMR, 2022 WL 4878720, at *3 (N.D. Cal. Oct. 3, 2022) (finding nine hours reasonable to complete fee motion); *Soldwisch v. Saul*, 487 F.Supp.3d 931, 935-36 (S.D. Cal. Sept. 14, 2020) (finding twelve hours reasonable); *Palomares v. Astrue*, No. C-11-4515 EMC, 2012 WL 6599552, at *9 (N.D. Cal. Dec. 18, 2012) (finding 4.3 hours spent on fee motion reasonable); *see also Keo Laosouvanh v. Astrue*, No. CIV S-06-0589 DAD, 2009 WL 799122, at *3 (reducing number of hours spent on fee motion from 16 to 12). Petitioner has not shown why the expenditure of 102.8 hours in this case

---

[2] The exception is time spent by Erin Rausch on the present motion. Petitioner asserts the Court should apply the statutory hourly rate of $258.46 to the 77 hours she expended on the present motion.

was reasonable. Instead, the Court finds it would have been reasonable to expend 10 hours on the present motion.

Turning next to the time spent on the "core habeas proceedings," Petitioner asserts his counsel's expenditure of 302.4 hours was reasonable. The "core habeas proceedings" consisted of a preliminary investigation into the case, development of case strategy, preparation and filing of the petition and the TRO motion, reviewing the Government's response, preparing and filing a reply brief, preparing for and attending a hearing on the TRO motion, preparing and filing two supplemental briefs on the motion, reviewing the Court's order denying the motion, reviewing the Government's response to the petition, preparing and filing a reply to the petition, preparing a renewed motion for TRO, preparing for and attending the hearing on that motion, and engaging in limited follow up tasks after that motion was granted. In other cases similar to this one, courts have found these kinds of tasks can reasonably be completed in far fewer hours. *See Zuniga Zuniga v. Chestnut*, No. 1:26-cv-2309-TLN-JDP, 2026 WL 2884269, at *4 (E.D. Cal. Sep. 25, 2026) (finding 25 hours reasonable); *Hilda Sucely R.M.D.E. v. Chestnut*, No. 1:26-CV-03903-MWJS, 2026 WL 2797943, at *3 (E.D. Cal. Sep., 18, 2026) (finding expenditure of 39.3 hours reasonable to litigate case); *Hervan Ivan A.-G. v. Chestnut*, No. 1:26-cv-03060-JLT-EGC (HC), 2026 WL 2641806, at *6 (E.D. Cal. Sep. 8, 2026) (finding expenditure of 17.2 hours reasonable to complete all tasks associated with petition), *Report and Recommendation adopted by Ivan A.G. v. Chestnut*, 2026 WL 2690702 (E.D. Cal. Sep. 11, 2026); *Gurjinder S. v. Warden of the Golden State Annex Detention Facility*, No. 1:26-cv-001288-TLN-CSK, 2026 WL 2110865, at *8 (E.D. Cal. July 22, 2026) (finding 57 hours reasonable); *Doe v. Chestnut*, 2026 WL 1459808, at *5 (finding expenditure of 131.06 hours reasonable). Petitioner has not shown why the expenditure of 302.4 hours in this case was reasonable. Accordingly, the Court reduces the reasonable number of hours to litigate the core habeas proceedings in this case to 65. This brings the total number of attorney hours reasonably expended on this case to 75.

/ / /

This takes the Court to the issue of the reasonable hourly rate for the attorneys. Under the EAJA, the applicable statutory maximum hourly rate adjusted for increases in the cost of living, for work performed in 2025 is $258.46. https://www.ca9.uscourts.gov/attorneys/statutory-maximum-rates (last visited Sept. 22, 2026). In this case, Petitioner seeks an enhancement of the hourly rate to $1,000 for all attorneys except Ms. Rauch.

"Enhanced hourly rates based on the special factor of the limited availability of qualified attorneys for the proceedings involved may be awarded under EAJA where the attorneys possess 'distinctive knowledge' and 'specialized skill' that was 'needful to the litigation in question' and 'not available elsewhere at the statutory rate.'" *Nadarajah*, 569 F.3d at 912 (citations omitted). Petitioner asserts the first factors of distinctive knowledge and specialized skill are met here as his attorneys had "significant experience in immigration law, federal court litigation, and habeas litigation." (Mot. at 16.) Respondents do not dispute this specific assertion, but instead argue that immigration experience does not amount to the kind of distinctive knowledge and specialized skill required to enhance the statutory hourly rate. (Opp'n at 17.) However, Petitioner is not relying solely on his attorneys' experience in immigration law to support an enhanced hourly rate. Rather, he is relying on their special *combination* of experience in immigration law, federal court litigation, and habeas litigation, all of which were required to successfully litigate this case.

Respondents also dispute that attorneys with this skill set were not available at the statutory rate. In support, they rely on the numerous cases filed in this District by qualified attorneys and the routine appointment of Federal Defenders to represent petitioners in these cases. (*Id.* at 16.) Clearly, there are private attorneys willing to represent petitioners in these kinds of cases, and Federal Defenders and other Criminal Justice Act attorneys have stepped up to assist the Court when the petitioners request appointment of counsel. Some of these attorneys appear to have immigration experience, some have experience with federal court litigation, and others have experience with habeas litigation. Attorneys with experience in all of those areas, however, are not always easy to come by, and even less

likely to be found at the statutory rate. Accordingly, the Court finds an enhancement of the hourly rate is appropriate in this case, but declines to award the requested $1,000 per hour. Instead, the Court finds $500 per hour to be reasonable and appropriate in this case. When multiplied by the 75 hours set out above, the total attorneys fee award is $37,500.

Petitioner also seeks recovery for 28.9 hours of time expended by "billing staff" at an hourly rate of $251.84. Notably, Petitioner failed to identify the individuals referred to as "billing staff," but they would appear to include M. Abner, J. Eaton, H. Padron, J. Croes, and Y. Mian. It is unclear to the Court, however, whether these individuals are paralegals, legal interns, or clerical staff. Absent further information about these individuals' roles, the Court declines to grant any award based on the expenditure of their time in this case.

The only remaining item is costs, and here Petitioner seeks recovery of $2,757.57 in costs for a transcript of the August 8, 2025 hearing on Petitioner's TRO motion and travel expenses incurred by Petitioner's counsel related to that hearing. Petitioner has not shown the travel expenses are recoverable as costs, therefore those expenses are disallowed. The transcripts, however, are recoverable. Accordingly, the Court awards Petitioner $268.55 in costs.

## II.
## CONCLUSION

For the reasons set out above, the Court grants in part and denies in part Plaintiffs' motion for attorney's fees, costs, and expenses. Specifically, the Court awards Plaintiffs attorneys' fees in the amount of $37,500, and costs in the amount of $268.55.

**IT IS SO ORDERED**.

Dated: September 29, 2026

Hon. Dana M. Sabraw
United States District Judge